# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on November 3, 2006**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** |
| | : | |
| **v.** | : | **Grand Jury Original** |
| | : | |
| **PARTHASARATHY SUDARSHAN,** | : | **Violations:** |
| **MYTHILI GOPAL,** | : | |
| **AKN PRASAD, and** | : | **18 U.S.C. § 371** |
| **SAMPATH SUNDAR,** | : | **(Conspiracy)** |
| | : | |
| **Defendants.** | : | **50 U.S.C. § 1705** |
| | : | **(International Emergency Economic** |
| | : | **Powers Act)** |
| | : | |
| | : | **15 C.F.R. Parts 730-774** |
| | : | **(Export Administration Regulations)** |
| | : | |
| | : | **Executive Order 13222** |
| | : | |
| | : | **22 U.S.C. § 2778** |
| | : | **(Arms Export Control Act)** |
| | : | |
| | : | **22 C.F.R. Parts 120-130** |
| | : | **(International Traffic in Arms** |
| | : | **Regulations)** |
| | : | |
| | : | **18 U.S.C. § 951** |
| | : | **(Illegal Agent of a Foreign** |
| | : | **Government)** |
| | : | |
| | : | **18 U.S.C. § 2** |
| | : | **(Aiding and Abetting and Causing an Act** |
| | : | **to Be Done)** |

## INDICTMENT

The Grand Jury charges that:

## COUNT ONE

At all times material to this Indictment:

### Introduction

1.       Cirrus Electronics ("Cirrus") was in the business of acquiring electronics components in the United States and exporting them to Government of India enterprises in India. It did business as Cirrus Electronics LLC ("Cirrus U.S.A."), with offices at 201 Huddersfield Drive and 22 Redglobe Court, Simpsonville, South Carolina; Cirrus Electronics Pte Ltd. ("Cirrus Singapore"), with an office at Level 3, ECON Building, No. 2, Ang Mo Kio Street 64, Ang Mo Kio Industrial Park 3, Singapore; and Cirrus Electronics Marketing (P) Ltd. ("Cirrus India"), with an office at #303, Suraj Ganga Arcade, 332/7, 15th Cross 2nd Block, Jayanagar, Bangalore, India.

2.       Cirrus maintained a website at www.cirruselectronics.com.  The website contained photographs of rocket launchers and fighter aircraft.  It stated that "Cirrus not only specializes in sourcing MIL [military] components that are marked discontinued by the original manufacturer but also acts as one stop distributors for all generic and military grade electronic and electro mechanical components from world wide sources."

3.       Defendant **PARTHASARATHY SUDARSHAN** founded Cirrus in Singapore in 1997.  He held himself out to be Cirrus' CEO, Managing Director, and President and Group Head.  In or around December 2004, he moved from Singapore to the United States and, while residing lawfully in the United States, worked out of Cirrus U.S.A.'s offices in Simpsonville, South Carolina.

4.       Defendant **MYTHILI GOPAL,** a lawful permanent resident of the United States, was Cirrus' International Sales Manager.  In or around November 2003, she opened Cirrus

-2-

U.S.A. in Simpsonville, South Carolina.

5.    Defendant **AKN PRASAD** formally opened Cirrus India in Bangalore in or around August 2004 and was CEO of India Operations.

6.    Defendant **SAMPATH SUNDAR** was Cirrus' Director of Operations and worked principally out of Cirrus Singapore's office.

7.    Co-Conspirator S.K. was Director of Marketing for Cirrus India.

8.    Co-Conspirator G.S. was a Marketing Manager for Cirrus India.

9.    The United States Department of Commerce, located in the District of Columbia, was responsible for reviewing and controlling the export of certain goods and technologies from the United States to foreign countries.  The Export Administration Act ("EAA"), 50 U.S.C. App. §§ 2101-2420, authorized the Department of Commerce to prohibit or curtail the export of any goods and technology as necessary, to protect, among other things, the national security and foreign policy of the United States.  The Department of Commerce implemented that authority through the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774.  Although the EAA had lapsed, the EAR continued to be in effect under the provisions of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, by virtue of Executive Order 13222 (August 17, 2001), as extended by successive Presidential notices.

10.    The Department of Commerce authorized the exportation of goods and technology to restricted countries and foreign end-users through the issuance of a license.  Any export of goods from the United States to a restricted country or foreign end-user without such a license was a violation of the EAR.

11.    Supplement No. 4 to Part 744 of the EAR contained a list (hereinafter the "Entity

List") that included certain Indian government, quasi-governmental, and private entities that the

Department of Commerce determined to be involved in nuclear or missile activities. These

activities posed a risk to the foreign policy and national security of the United States because of

their significance for nuclear explosive purposes and for the delivery of nuclear devices.

Pursuant to the EAR, the Department of Commerce ordinarily required individuals and

companies seeking to export goods from the United States to consignees on the Entity List first

to obtain a license from the Department of Commerce in the District of Columbia.

12.     The Vikram Sarabhai Space Centre ("VSSC") was within the Department of

Space of the Government of India. It was responsible for the research, development, and

production of the Government of India's space launch vehicles. These activities encompassed

both civilian spacecraft and ballistic missiles. VSSC was on the Entity List.

13.     Bharat Dynamics Ltd. ("BDL") was within the Ministry of Defence of the

Government of India. The Indian Ministry of Defence had formed BDL in 1970 for the

production of guided missiles and related defense equipment. It was the prime production

agency for missile weaponry systems under India's Integrated Guided Missile Program. BDL

was on the Entity List.

14.     The WS512K32N-17H1QA and WS512K32N-17H1IA were Static Random

Access Memory computer chips ("SRAMs") manufactured by a company in Phoenix, Arizona.

They were designed to withstand extreme changes in temperature and had applications in missile

guidance systems. The Department of Commerce required a license for the export of the

WS512K32N-17H1QA and WS512K32N-17H1IA SRAMs to VSSC.

15.     The 5962-9461110HTA was an SRAM that was manufactured by a company in

Austin, Texas, and that was equivalent to both the WS512K32N-17H1QA and the WS512K32N-17H1IA SRAMs. The 5962-9560004MXA was another SRAM that the company in Austin, Texas, manufactured. The Department of Commerce required a license for the export of the 5962-9461110HTA and the 5962-9560004MXA SRAMs to VSSC.

16.     The T110C475K100AS was a capacitor. Capacitors stored and discharged electrical current and had applications in missile guidance and firing systems. The Department of Commerce required a license for the export of the T110C475K100AS to BDL.

17.     The CD4043BF3A was a semi-conductor and had applications in missile guidance and firing systems. The Department of Commerce required a license for the export of the CD4043BFA to BDL.

18.     The JAN1N3611 was a rectifier. Rectifiers changed alternating current to direct current and had applications in missile guidance and firing systems. The Department of Commerce required a license for the export of the JAN1N3611 to BDL.

19.     The M8340109K6801GC was a resistor. Resistors regulated the flow of electric current and had applications in missile guidance and firing systems. The Department of Commerce required a license for the export of the M8340109K6801GC to BDL.

### The Conspiracy

20.     Beginning in or around October 2002 and continuing through in or around September 2006, within the District of Columbia and elsewhere, the defendants,

**PARTHASARATHY SUDARSHAN, MYTHILI GOPAL, AKN PRASAD, SAMPATH SUNDAR**, and others known and unknown to the Grand Jury, knowingly combined, conspired, confederated, and agreed with each other to violate IEEPA and the EAR by exporting critical

electronic components to Entity List organizations in India without first obtaining licenses from the Department of Commerce, located in the District of Columbia.

## Objects of the Conspiracy

21.    The objects of the conspiracy were:

a.    to make money for Cirrus and its owners and employees;

b.    to supply Government of India enterprises on the Entity List with critical electronic components needed in the production of missiles and missile launch vehicles;

c.    to evade the prohibitions and licensing requirements of IEEPA and the EAR; and

d.    to conceal the prohibited transactions from detection by the United States government so as to avoid penalties.

## Manner and Means of the Conspiracy

22.    The conspirators would and did use the following manner and means, among others, to accomplish the objects of the conspiracy:

a.    Cirrus received orders from Entity List organizations in India for U.S. origin electronic components that these organizations were restricted from receiving pursuant to the EAR;

b.    Defendants **PARTHASARATHY SUDARSHAN, MYTHILI GOPAL,** and **SAMPATH SUNDAR** contacted vendors in the United States and negotiated purchases of the electronic components on behalf of the Indian Entity List organizations;

c.    Defendant **AKN PRASAD** served as the liaison between Cirrus and the Entity List organizations in India;

-6-

      d.      Defendants **PARTHASARATHY SUDARSHAN** and **SAMPATH SUNDAR** provided false end-user certificates to certain vendors that concealed the fact that an Indian Entity List organization was the true recipient of the products;

      e.      In order to conceal from the United States government that electronic components were being exported to Entity List organizations in India, defendants **PARTHASARATHY SUDARSHAN, MYTHILI GOPAL,** and **SAMPATH SUNDAR** caused certain vendors in the United States to ship the components to Cirrus Singapore.  Upon arrival of the commodities in Singapore, Cirrus Singapore re-exported them to the Entity List customers in India;

      f.      When vendors in the United States did not inquire whether Cirrus U.S.A. was purchasing electronic components for export, defendants **PARTHASARATHY SUDARSHAN** and **MYTHILI GOPAL,** and **SAMPATH SUNDAR** refrained from revealing the true destination of the products and caused those vendors to ship their goods to Cirrus U.S.A. in Simpsonville, South Carolina, so as further to conceal from the United States government that electronic components were being exported to Entity List organizations in India.  After the products arrived in South Carolina, defendant **MYTHILI GOPAL** and others associated with Cirrus U.S.A. repackaged the goods and shipped them to Cirrus Singapore.  Upon arrival of the items in Singapore, Cirrus Singapore re-exported them to Entity List customers in India.

      g.      No export licenses were obtained from the Department of Commerce in the District of Columbia for exports of electronic components to Entity List organizations in India.

**Overt Acts**

23.      In furtherance of this conspiracy, the defendants, **PARTHASARATHY**

**SUDARSHAN, MYTHILI GOPAL, AKN PRASAD**, and **SAMPATH SUNDAR**, and other

co-conspirators committed overt acts, including but not limited to the following:

(1)      On or about December 3, 2002, defendants **PARTHASARATHY**

**SUDARSHAN** and **SAMPATH SUNDAR** faxed a Request for Quotation for 10 WS512K32N-

17H1QA SRAMs to a vendor in Phoenix Arizona.  The Cirrus customer on whose behalf they

were seeking the price quotation was VSSC.

(2)      On or about May 7, 2003, in response to an e-mail from a vendor in

Phoenix, Arizona, requesting an end use statement for the 10 WS512K32N-17H1QA SRAMs

described in Overt Act No. 1, defendant **SAMPATH SUNDAR** sent an e-mail to the vendor that

contained as an attachment an end-use statement falsely identifying the end-user of the SRAMs

as the "Naval Physical & Oceanographic Laboratory" ("NPOL") in Kochi, India, and the end use

as "for the development of electronic hardware for oceanographic instrument measuring the

ocean parameters for our own use."

(3)      On or about May 23, 2003, defendants **PARTHASARATHY**

**SUDARSHAN** and **SAMPATH SUNDAR** caused a vendor in Phoenix, Arizona, to ship 10

WS512K32N-17H1QA SRAMs to Cirrus Singapore.  Defendants **PARTHASARATHY**

**SUDARSHAN** and **SAMPATH SUNDAR** further caused the vendor not to obtain a license

from the Department of Commerce in the District of Columbia for this export by concealing from

the vendor that VSSC in India was the ultimate consignee of the 10 SRAMs.

(4)      On or about August 15, 2003, defendant **PARTHASARATHY**

**SUDARSHAN**, after being informed by a vendor in Phoenix, Arizona, that any export of a particular model of SRAMs to VSSC required a license from the Department of Commerce, sent an e-mail to the vendor in which he falsely represented as follows:

> We will also inform and impose the same condition to our customers. If the license is not approved, neither you nor cirrus will have any bearing on the order. This condition is also imposed as the part of the quote.
>
> Mostly customers like VSSC are fully aware of the licensing situation.
>
> You may send us your bid and repeat . . . the order from us can be accepted only upon the license. The delivery from your end start only from the license.

(5)     On or about August 18, 2003, defendant **SAMPATH SUNDAR** faxed a purchase order to a vendor in Phoenix, Arizona, for 10 additional WS512K32N-17H1QA SRAMs and included an end-user statement that falsely claimed that the end-user was NPOL when, in fact, Cirrus was acquiring the SRAMs on behalf of VSSC.

(6)     On or about September 27, 2003, defendants **PARTHASARATHY SUDARSHAN** and **SAMPATH SUNDAR** caused a vendor in Phoenix, Arizona, to ship 10 WS512K32N-17H1QA SRAMs to Cirrus Singapore. Defendants **PARTHASARATHY SUDARSHAN** and **SAMPATH SUNDAR** further caused the vendor not to obtain a license from the Department of Commerce in the District of Columbia for this export by concealing from the vendor that VSSC in India was the ultimate consignee of the 10 SRAMs.

(7)     On or about November 19, 2003, defendant **MYTHILI GOPAL** incorporated Cirrus U.S.A. in the State of South Carolina.

(8)     On or about May 20, 2004, defendant **SAMPATH SUNDAR** sent an e-mail to a vendor in Phoenix, Arizona, in response to an inquiry from the vendor about the end-

user for the 30 WS512K32N-17H1IA SRAMs for which Cirrus had made a request for a price

quotation, in which **SUNDAR** falsely stated that

> The End user is NPOL and the application of use is for the development of electronic
> hardware for oceanographic instrument measuring the ocean parameters of their own use.

> * * *

> We hope that we have cleared your doubts and we also understand your concern with
> commerce dept of USA.

> May we seek your quotation now.

The true customer for which Cirrus was seeking to acquire the 30 WS512K32N-17H1IA SRAMs

was VSSC.

(9)     On or about September 22, 2004, Cirrus Singapore faxed a purchase order

for 30 WS512K32N-17H1IA SRAMs to a vendor in Phoenix, Arizona, and included an end-user

statement that falsely stated that NPOL was the end-user when, in fact, Cirrus was acquiring the

SRAMs on behalf of VSSC.

(10)     On or about September 30, 2004, after receiving an e-mail from the vendor

in Phoenix, Arizona, informing Cirrus that it had discovered that the NPOL end-user statements

were fraudulent, that it would no longer do business with Cirrus, and that it was considering

reporting Cirrus to the Department of Commerce, defendant **PARTHASARATHY**

**SUDARSHAN** advised defendants **MYTHILI GOPAL** and **AKN PRASAD** as follows:

> 1) On reading the emails from [the representative from the vendor], do not get panic. At
> the end of the game, it is I . . . who need to face the music;

> MG: You are not the owner of Cirrus LLC; Members will not be affected . . . Besides, I
> am moving over to USA to take control on such crisis. . Hence, do not fear about
> anything. . It is all business Games and come what may be the results,,, Detach ourselves
> from the results.. We concentrate on actions only.

2) TO AKN:

New Head ache for New CEO . . . .  Do not worry, if we apply our thoughts in professional way..

The actions are as follows:

a) Please call [co-conspirator S.K.]; You and SK may go to VSSC and explain them that our intention is not to make profit on this order but to service VSSC. .

b) Ascertain if VSSC has got some clout over NPOL....  We need not indulge full details to them..

* * *

d) We meet NPOL also and explain them so that we do not dent our business with them also....

* * *

It is veil threat of [the vendor to go to the Department of Commerce]; There are 1000 such companies and 100,000 complaints..

As mentioned to you earlier, [the Department of Commerce] came to [another Singapore company] to many other distributors in Singapore and just cautioned them only.  In our case, it is not that..

(11)     On or about January 28, 2005, defendant **AKN PRASAD** sent an e-mail to an official at VSSC informing him that Cirrus had "identified an exact equivalent to" the WS512K32N-17H1QA and WS512K32N-17H1IA SRAMs.

(12)     On or about February 1, 2005, Co-Conspirator S.K. sent an e-mail to defendants **PARTHASARATHY SUDARSHAN** and **AKN PRASAD** advising them that VSSC had accepted the substitute part for the WS512K32N-17H1QA and WS512K32N-17H1IA SRAMs and that VSSC was instructing Cirrus to procure the parts.

(13)     On or about September 6, 2005, BDL sent Cirrus a purchase order for 90

CD4043BF3A semi-conductors.

(14)    On or about September 16, 2005, defendant **PARTHASARATHY SUDARSHAN** provided a "Statement of Assurance" to a vendor in Hauppage, New York, from which Cirrus later acquired parts for BDL. In the "Statement of Assurance," **SUDARSHAN** stated:

> We acknowledge that products (or technical data) to be purchased from [the vendor] include or may include products which are subject to export control laws and regulations of the United States.

He further falsely represented:

> We hereby certify that all sale, transfer, consignment, loan, or donation of products and/or technology acquired from [the vendor] made directly or indirectly outside the United States are made in full compliance with all applicable export control laws and regulations.

(15)    On or about September 16, 2005, defendant **AKN PRASAD** sent defendant **PARTHASARATHY SUDARSHAN** an e-mail concerning an order from BDL for 110 T110C475K100AS capacitors.

(16)    On or about September 30, 2005, defendants **PARTHASARATHY SUDARSHAN** and **MYTHILI GOPAL** caused Cirrus U.S.A. to ship 15 T110C475K100AS capacitors to Cirrus Singapore for re-export to BDL in India. Cirrus U.S.A. did not obtain a license from the Department of Commerce in the District of Columbia for this export.

(17)    On or about October 10, 2005, Co-Conspirator G.S. sent defendant **SAMPATH SUNDAR** an e-mail in which he stated, "Attached is the new enquiry from BDL for a new project." Co-conspirator G.S. further informed defendant **SAMPATH SUNDAR**:

> One more issue is that, BDL has recvd 15 Nos. of capacitor which we have supplied recently. However, they require the balance parts also now . . . .

-12-

(18)    On or about October 10, 2005, defendant **PARTHASARATHY SUDARSHAN** opened an e-mail from a vendor in Elmsford, New York, containing a quote for 30 5962-9560004MXA SRAMs.

(19)    On or about November 5, 2005, defendants **PARTHASARATHY SUDARSHAN** and **MYTHILI GOPAL** caused Cirrus U.S.A. to ship 95 T110C475K100AS capacitors to Cirrus Singapore for re-export to BDL in India.  Cirrus U.S.A. did not obtain a license from the Department of Commerce in the District of Columbia for this export.

(20)    On or about November 22, 2005, VSSC sent Cirrus a purchase order for 150 5962-9560004MXA SRAMs and 90 5962-9461110HTA SRAMS.

(21)    On or about November 30, 2005, defendant **AKN PRASAD** sent an e-mail to defendant **PARTHASARATHY SUDARSHAN** in which he wrote:

1.    VSSC is now our A+ customer . . . should aim at min $500K to 750K for 2006.

* * *

3.    BDL, new stable customer aded [sic] – $38 K total till date – Look for $75 K for 2006.

(22)    On or about January 4, 2006, defendant **SAMPATH SUNDAR** sent an e-mail to a vendor in Hauppage, New York, inquiring, among other things, as to the status of an order for 90 CD4043BF3A semi-conductors that Cirrus was acquiring for BDL.

(23)    On or about January 14, 2006, defendants **PARTHASARATHY SUDARSHAN** and **MYTHILI GOPAL** caused Cirrus U.S.A. to ship 90 CD4043BF3A semi-conductors to Cirrus Singapore for re-export to BDL in India.  Cirrus U.S.A. did not obtain a license from the Department of Commerce in the District of Columbia for this export.

(24)     On or about February 17, 2006, defendant **SAMPATH SUNDAR** sent an e-mail to a vendor in Pompano Beach, Florida, requesting a price quotation for 110 M8340109K6801GC resistors that Cirrus was acquiring for BDL.

(25)     On or about March 24, 2006, defendants **PARTHASARATHY SUDARSHAN** and **MYTHILI GOPAL** caused Cirrus U.S.A. to ship 30 5962-9560004MXA SRAMs to Cirrus Singapore for re-export to VSSC in India.  Cirrus U.S.A. did not obtain a license from the Department of Commerce in the District of Columbia for this export.

(26)     On or about April 7, 2006, defendants **PARTHASARATHY SUDARSHAN** and **MYTHILI GOPAL** caused Cirrus U.S.A. to ship 200 JAN1N3611 rectifiers and 110 M8340109K6801GC resistors to Cirrus Singapore for re-export to BDL in India.  Cirrus U.S.A. did not obtain a license from the Department of Commerce in the District of Columbia for this export.

(27)     On or about April 17, 2006, defendants **PARTHASARATHY SUDARSHAN** and **MYTHILI GOPAL** caused Cirrus U.S.A. to ship 90 5962-9461110HTA SRAMs and 150 5962-9560004MXA SRAMs to Cirrus Singapore for re-export to VSSC in India.  Cirrus U.S.A. did not obtain a license from the Department of Commerce in the District of Columbia for this export.

(28)     On or about September 19, 2006, defendant **MYTHILI GOPAL** falsely told a representative of a vendor in Redmond, Washington, that she had spoken with an official at the Department of Commerce who, according to **GOPAL**, advised her that the export to VSSC of various components that the vendor sold did not require a license.  **GOPAL** further falsely represented to the vendor that she had told the Department of Commerce official that the end-use

-14-

of the components would be in a satellite launch vehicle.

(**Conspiracy to Violate the International Emergency Economic Powers Act and the Export Administration Regulations**, in violation of Title 18, United States Code, Section 371.)

## COUNT TWO

1.     Paragraphs 1 through 4, 6, 9 through 12, and 14 of Count One of this Indictment are re-alleged as if fully set forth herein.

2.     On or about May 23, 2003, within the District of Columbia and elsewhere, defendants **PARTHASARATHY SUDARSHAN**, **MYTHILI GOPAL**, and **SAMPATH SUNDAR** willfully exported 10 WS512K32N-17H1QA SRAMs to VSSC in India without having first obtained a license from the Department of Commerce, located in the District of Columbia.

(**Unlawful Export**, in violation of Title 50, United States Code, Section 1705, Executive Order 13222, Title 15, Code of Federal Regulations, Supplement 4 to Part 744 and Section 764.2(a); **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

## COUNT THREE

1.     Paragraphs 1 through 4, 6, 9 through 12, and 14 of Count One of this Indictment are re-alleged as if fully set forth herein.

2.     On or about September 26, 2003, within the District of Columbia and elsewhere, defendants **PARTHASARATHY SUDARSHAN**, **MYTHILI GOPAL**, and **SAMPATH SUNDAR** willfully exported 10 WS512K32N-17H1QA SRAMs to VSSC in India without having first obtained a license from the Department of Commerce, located in the District of Columbia.

(**Unlawful Export**, in violation of Title 50, United States Code, Section 1705, Executive Order

13222, Title 15, Code of Federal Regulations, Supplement 4 to Part 744 and Section 764.2(a); **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

## COUNT FOUR

1.    Paragraphs 1 through 6, 9 through 11, 13, and 16 of Count One of this Indictment are re-alleged as if fully set forth herein.

2.    On or about September 30, 2005, within the District of Columbia and elsewhere, defendants **PARTHASARATHY SUDARSHAN**, **MYTHILI GOPAL**, **AKN PRASAD**, and **SAMPATH SUNDAR** willfully exported 15 T10C475K100AS capacitors to BDL in India without having first obtained a license from the Department of Commerce, located in the District of Columbia.

(**Unlawful Export**, in violation of Title 50, United States Code, Section 1705, Executive Order 13222, Title 15, Code of Federal Regulations, Supplement 4 to Part 744 and Section 764.2(a); **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

## COUNT FIVE

1.    Paragraphs 1 through 6, 9 through 11, 13, and 16 of Count One of this Indictment are re-alleged as if fully set forth herein.

2.    On or about November 4, 2005, within the District of Columbia and elsewhere, defendants **PARTHASARATHY SUDARSHAN**, **MYTHILI GOPAL**, **AKN PRASAD**, and **SAMPATH SUNDAR** willfully exported 95 T10C475K100AS capacitors to BDL in India without having first obtained a license from the Department of Commerce, located in the District of Columbia.

(**Unlawful Export**, in violation of Title 50, United States Code, Section 1705, Executive Order 13222, Title 15, Code of Federal Regulations, Supplement 4 to Part 744 and Section 764.2(a);

-16-

**Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

## COUNT SIX

1.      Paragraphs 1 through 6, 9 through 11, 13, and 17 of Count One of this Indictment are re-alleged as if fully set forth herein.

2.      On or about January 14, 2006, within the District of Columbia and elsewhere, defendants **PARTHASARATHY SUDARSHAN**, **MYTHILI GOPAL**, **AKN PRASAD**, and **SAMPATH SUNDAR** willfully exported 90 CD4043BF3A semi-conductors to BDL in India without having first obtained a license from the Department of Commerce, located in the District of Columbia.

(**Unlawful Export**, in violation of Title 50, United States Code, Section 1705, Executive Order 13222, Title 15, Code of Federal Regulations, Supplement 4 to Part 744 and Section 764.2(a); **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

## COUNT SEVEN

1.      Paragraphs 1 through 6, 9 through 12, and 14 through 15 of Count One of this Indictment are re-alleged as if fully set forth herein.

2.      On or about March 24, 2006, within the District of Columbia and elsewhere, defendants **PARTHASARATHY SUDARSHAN**, **MYTHILI GOPAL**, **AKN PRASAD**, and **SAMPATH SUNDAR** willfully exported 30 5962-9560004MXA SRAMs to VSSC in India without having first obtained a license from the Department of Commerce, located in the District of Columbia.

(**Unlawful Export**, in violation of Title 50, United States Code, Section 1705, Executive Order 13222, Title 15, Code of Federal Regulations, Supplement 4 to Part 744, Section 764.2(a), and Supplement 1 to Part 774; **Aiding and Abetting and Causing an Act to Be Done**, in violation

of Title 18, United States Code, Section 2.)

## COUNT EIGHT

1.      Paragraphs 1 through 6, 9 through 11, 13, and 18 through 19 of Count One of this
Indictment are re-alleged as if fully set forth herein.

2.      On or about April 7, 2006, within the District of Columbia and elsewhere,
defendants **PARTHASARATHY SUDARSHAN**, **MYTHILI GOPAL**, **AKN PRASAD**, and
**SAMPATH SUNDAR** willfully exported 200 JAN1N3611 rectifiers and 110
M8340109K6801GC resistors to BDL in India without having first obtained a license from the
Department of Commerce, located in the District of Columbia.

(**Unlawful Export**, in violation of Title 50, United States Code, Section 1705, Executive Order
13222, Title 15, Code of Federal Regulations, Supplement 4 to Part 744 and Section 764.2(a);
**Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States
Code, Section 2.)

## COUNT NINE

1.      Paragraphs 1 through 6, 9 through 12, and 14 through 15 of Count One of this
Indictment are re-alleged as if fully set forth herein.

2.      On or about April 17, 2006, within the District of Columbia and elsewhere,
defendants **PARTHASARATHY SUDARSHAN**, **MYTHILI GOPAL**, **AKN PRASAD**, and
**SAMPATH SUNDAR** willfully exported 90 5962-9461110HTA SRAMs and 150 5962-
9560004MXA SRAMs to VSSC in India without having first obtained a license from the
Department of Commerce, located in the District of Columbia.

(**Unlawful Export**, in violation of Title 50, United States Code, Section 1705, Executive Order
13222, Title 15, Code of Federal Regulations, Supplement 4 to Part 744, Section 764.2(a), and
Supplement 1 to Part 774; **Aiding and Abetting and Causing an Act to Be Done**, in violation
of Title 18, United States Code, Section 2.)

## COUNT TEN

### Introduction

1.     Paragraphs 1 through 8 and 12 of Count One of this Indictment are re-alleged as if fully set forth herein.

2.     The Tejas Light Combat Aircraft was an advanced fighter jet that the Government of India was developing.

3.     The Aeronautical Development Establishment ("ADE") was an enterprise within the Government of India Ministry of Defence and was responsible for developing the Tejas Light Combat Aircraft.

4.     Co-Conspirator A was a Government of India official located in the District of Columbia.

5.     Co-Conspirator P.B.S. was an official at ADE.

6.     The export of certain items and services, known as defense articles and services, was governed by the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, and the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Parts 120-130.  These items or services were set forth in and constituted the United States Munitions List ("Munitions List") codified at 22 C.F.R. § 121.1.  Pursuant to Section 2778(b)(2) of the AECA, no defense article and services designated by the President of the United States under the statute and regulations cited above could be exported without a license issued in accordance with AECA and the ITAR. The United States Department of State, Directorate of Defense Trade Controls ("DDTC"), located in the District of Columbia, had responsibility for issuing licenses for the export of defense items and services.  In addition, exporters in the United States of defense items and

services were required to register with DDTC.

7.      The i960 Intel Microprocessor ("i960 microprocessor") was manufactured by a

vendor in Newburyport, Massachusetts, under license from Intel.  The i960 microprocessor had

applications in the navigation and weapons guidance systems of the Tejas Light Combat Aircraft.

For such applications, the i960 was a defense article on the Munitions List and could not be

exported from the United States without the exporter first obtaining a license from the DDTC.

8.      The M39014/01-1284, the M39014/01-1299, the M39014/01-1317, the

M39014/01-1535, and the M39014/01-1553 were capacitors.  These items were defense articles

on the Munitions List for exports to VSSC and could not be exported from the United States to

VSSC in India without the exporter first obtaining a license from the DDTC.

### The Conspiracy

9.      Beginning in or around December 2002 and continuing through in or around

February 2006, within the District of Columbia and elsewhere, the defendants

**PARTHASARATHY SUDARSHAN, MYTHILI GOPAL, AKN PRASAD**, and **SAMPATH**

**SUNDAR**, and others known and unknown to the Grand Jury, knowingly combined, conspired,

confederated, and agreed with each other to violate AECA and the ITAR by exporting defense

articles on the Munitions List to India without first obtaining licenses from the Directorate of

Defense Trade Controls, located in the District of Columbia.

### Objects of the Conspiracy

10.     The objects of the conspiracy were:

        a.      to make money for Cirrus and its owners and employees;

        b.      to supply ADE with a critical component in the navigation and weapons

guidance systems of the Government of India's Tejas Light Combat Aircraft;

        c.      to supply VSSC with critical components for its launch vehicle and ballistic missile programs;

        d.      to evade the prohibitions and licensing requirements of AECA and the ITAR; and

        e.      to conceal the prohibited transactions from detection by the United States government so as to avoid penalties.

**Manner and Means of the Conspiracy**

    11.    The conspirators would and did use the following manner and means, among others, to accomplish the objects of the conspiracy:

        a.      Defendant **PARTHASARATHY SUDARSHAN** met in India with officials from the Ministry of Defence and ADE and coordinated the acquisition of 500 i960 microprocessors for the Tejas Light Combat Aircraft.

        b.      Defendants **PARTHASARATHY SUDARSHAN** and **SAMPATH SUNDAR** communicated and negotiated with a vendor in Newburyport, Massachusetts, in order to arrange the purchase of 500 i960 microprocessors for export to ADE for use in the navigation and weapons guidance systems of the Tejas Light Combat Aircraft.

        c.      In arranging for the purchase of the 500 i960 microprocessors for ADE, defendants **PARTHASARATHY SUDARSHAN** and **MYTHILI GOPAL** coordinated with and took directions from Co-Conspirator A, a Government of India official located in the District of Columbia.

        d.      In arranging for the purchase of the 500 i960 microprocessors for ADE,

defendants **PARTHASARATHY SUDARSHAN** and **MYTHILI GOPAL** coordinated with

and took directions from officials with ADE in India.

        e.        Defendant **AKN PRASAD** served as a liaison between Cirrus and ADE in

India.

        f.        Defendants **PARTHASARATHY SUDARSHAN, MYTHILI, AKN**

**PRASAD**, and **SAMPATH SUNDAR** also acquired defense articles on the United States

Munitions List for export to VSSC.

        g.        In order to conceal from the United States government that the i960

microprocessors were being exported to ADE for use in the navigation and weapons guidance

systems of the Tejas Light Combat Aircraft, defendants **PARTHASARATHY SUDARSHAN**,

**MYTHILI GOPAL**, and **SAMPATH SUNDAR** caused the vendor in Newburyport,

Massachusetts, to ship the items to Cirrus Singapore.  Upon arrival of the goods in Singapore,

Cirrus Singapore re-exported them to ADE in India.

        h.        In order to conceal from the United States government that Cirrus was

acquiring defense articles on the United States Munitions List for VSSC, defendants

**PARTHASARATHY SUDARSHAN** and **MYTHILI GOPAL** caused a vendor in Pompano

Beach, Florida, to ship its products to Cirrus U.S.A. in Simpsonville, South Carolina.  After the

products arrived in South Carolina, defendant **MYTHILI GOPAL** and others associated with

Cirrus U.S.A. repackaged the goods and shipped them to Cirrus Singapore.  Upon arrival of the

items in Singapore, Cirrus Singapore re-exported them to VSSC in India.

        i.        Cirrus U.S.A. did not register with the Directorate of Defense Trade

Controls in the District of Columbia as an exporter of defense articles on the United States

Munitions List.

        j.      No export licenses were obtained from the Directorate of Defense Trade Controls in the District of Columbia for exports of defense articles on the United States Munitions List to ADE and VSSC in India.

### Overt Acts

12.     In furtherance of the this conspiracy, the defendants, **PARTHASARATHY SUDARSHAN**, **MYTHILI GOPAL, AKN PRASAD**, and **SAMPATH SUNDAR**, and other co-conspirators committed overt acts, including but not limited to the following:

       (1)    On or about December 12, 2002, ADE faxed to Cirrus Singapore a request for a price quotation for 500 i960 microprocessors.

       (2)    On or about April 8, 2003, ADE executed a purchase order for Cirrus to acquire 500 i960 processors for use in the Tejas Light Combat Aircraft.

       (3)    On or about June 12, 2003, defendant **PARTHASARATHY SUDARSHAN** sent an e-mail to a vendor in Newburyport, Massachusetts, enclosing a purchase order from Cirrus for 254 i960 microprocessors.

       (4)    On or about September 29, 2003, defendant **PARTHASARATHY SUDARSHAN** traveled to Newburyport, Massachusetts, to meet with representatives of the vendor of the i960 microprocessors and to discuss an upcoming visit to the vendor with Co-Conspirator A during which **SUDARSHAN** and Co-Conspirator A would observe testing of the i960 microprocessors.

       (5)    On or about January 27, 2004, defendant **SAMPATH SUNDAR** sent a fax to the vendor in Newburyport, Massachusetts, in which he introduced himself as the "second

man in this company Cirrus Electronics Pte Ltd" and discussed testing of the i960 microprocessors.

(6)     On or about January 28, 2004, defendant **PARTHASARATHY SUDARSHAN** sent an e-mail to Co-Conspirator A in the District of Columbia in which he introduced himself and Cirrus to Co-Conspirator A and discussed arrangements for their visit to the vendor in Newburyport, Massachusetts, to observe the testing of the i960 microprocessors.

(7)     On or about February 12, 2004, defendant **MYTHILI GOPAL** sent an e-mail to Co-Conspirator A in the District of Columbia in which she discussed travel arrangements for Co-Conspirator A's visit to the vendor in Newburyport, Massachusetts, that was manufacturing the i960 microprocessors.

(8)     Between on or about February 15, 2004, and on or about February 20, 2004, defendant **PARTHASARATHY SUDARSHAN** and Co-Conspirator A traveled to the vendor in Newburyport, Massachusetts, and observed the testing of the i960 microprocessors.

(9)     Between on or about February 15, 2004, and on or about February 20, 2004, defendant **PARTHASARATHY SUDARSHAN** falsely assured representatives of the vendor in Newburyport, Massachusetts, that the i960 microprocessors were going to remain in Singapore for use in a joint Government of India project with Lockheed Martin, when, in fact, Cirrus Singapore was going to re-export the i960 microprocessors to ADE in India for use in the navigation and weapons guidance systems of the Tejas Light Combat Aircraft.

(10)    On or about February 20, 2004, Co-Conspirator A signed an "Inspection & Acceptance Certificate" on behalf of the Government of India in which he attested that the vendor in Newburyport, Massachusetts had tested 380 i960 microprocessors and that 377 of the i960

-24-

microprocessors satisfied the criteria set forth in ADE's purchase order for the items.

(11)    On or about February 28, 2004, defendant **PARTHASARATHY SUDARSHAN** caused a vendor in Newburyport, Massachusetts, to ship 377 i960 microprocessors to Cirrus Singapore.  Defendant **PARTHASARATHY SUDARSHAN** further caused the vendor not to obtain a license from the Directorate of Defense Trade Controls in the District of Columbia for this export by concealing from the vendor that the true end-user was ADE in India and that the true end-use was in the navigation and weapons guidance systems of the Tejas Light Combat Aircraft.

(12)    On or about July 27, 2004, defendant **PARTHASARATHY SUDARSHAN** sent an e-mail to Co-Conspirator A in the District of Columbia in which he wrote, "Hope we should be able to solve the present problem on sourcing the balance 120 nos. of [i960 microprocessors] case."

(13)    On or about June 15, 2005, defendant **PARTHASARATHY SUDARSHAN** had a telephone conversation with Co-Conspirator P.B.S. in India during which they discussed the upcoming trip of Co-Conspirator P.B.S. to the United States to observe the tests of additional i960 microprocessors at the vendor in Newburyport, Massachusetts.

(14)    On or about September 15, 2005, defendants **PARTHASARATHY SUDARSHAN** and **MYTHILI GOPAL** had a telephone conversation during which they discussed a conversation that **GOPAL** had with Co-Conspirator A concerning the trip to the United States of Co-Conspirator P.B.S. for the testing of the i960 microprocessors and reimbursement to Cirrus from the Government of India for expenses related to that trip.

(15)    On or about September 15, 2005, Co-Conspirator A sent an e-mail to

defendant **PARTHASARATHY SUDARSHAN** concerning reimbursement from the
Government of India to Cirrus for travel expenses incurred for the visit of Co-Conspirator P.B.S.
to the vendor in Newburyport, Massachusetts.

(16)    Between on or about September 20, 2005, and on or about September 23,
2005, defendant **PARTHASARATHY SUDARSHAN** and Co-Conspirator P.B.S. traveled to
the vendor in Newburyport, Massachusetts, and observed testing on 123 i960 microprocessors.

(17)    On or about September 29, 2005, defendant **PARTHASARATHY
SUDARSHAN** sent a price quotation to VSSC for various models of capacitors that VSSC
sought to acquire.

(18)    On or about October 13, 2005, defendant **PARTHASARATHY
SUDARSHAN** caused a vendor in Newburyport, Massachusetts, to ship 123 i960
microprocessors to Cirrus Singapore.  With respect to this export, the vendor assigned
**SUDARSHAN** and Cirrus, U.S.A., the responsibility of determining whether an export license
was necessary.  Neither **SUDARSHAN** nor Cirrus U.S.A. ever obtained a license from the
Directorate of Defense Trade Controls in the District of Columbia for the export of the 123 i960
microprocessors to ADE in India for use in the navigation and weapons guidance systems of the
Tejas Light Combat Aircraft.

(19)    On or about October 15, 2005, defendant **AKN PRASAD** sent an e-mail
to defendant **PARTHASARATHY SUDARSHAN** in which he discussed an opportunity to
supply microprocessors for another Government of India fighter jet program.  **PRASAD** wrote:

> [A Cirrus associate] received a good enquiry to develop WCS (Weapon control System)
> for Jaguar Aircraft.

The WCS consists of a micro controller/micro processor based on logic system with relays to ensure outputs are generated to release various stores (armaments) based on inputs coming from NAVWASS [Navigation and Weapon-Aiming Sub System] and pilot settings.

To start with we need to identify a Microcontroller/microprocessor cleared for Military Airborne use, like the Intel i960.  i960 may be an overkill for this project.

(20)    On or about January 14, 2006, defendants **PARTHASARATHY SUDARSHAN** and **MYTHILI GOPAL** caused Cirrus U.S.A. to ship to Cirrus Singapore for re-export to VSSC in India the following items:  100 M39014/01-1284 capacitors, 500 M39014/01-1299 capacitors, 500 M39014/01-1317 capacitors, 800 M39014/01-1535 capacitors, and 600 M39014/01-1553 capacitors.  Cirrus U.S.A. did not obtain a license from the Directorate of Defense Trade Controls in the District of Columbia for this export.

(21)    On or about April 7, 2006, defendants **PARTHASARATHY SUDARSHAN** and **MYTHILI GOPAL** caused Cirrus U.S.A. to ship 500 M39014/01-1284 capacitors to Cirrus Singapore for re-export to VSSC in India.  Cirrus U.S.A. did not obtain a license from the Directorate of Defense Trade Controls in the District of Columbia for this export.

(**Conspiracy to Violate the Arms Export Control Act and the International Traffic in Arms Regulations**, in violation of Title 18, United States Code, Section 371.)

## COUNT ELEVEN

1.    Paragraphs 1 through 4 and 6 of Count One of this Indictment and Paragraphs 2 through 4 and Paragraphs 6 through 7 of Count Ten of this Indictment are re-alleged as if fully set forth herein.

2.    On or about February 27, 2004, within the District of Columbia and elsewhere,

defendants **PARTHASARATHY SUDARSHAN**, **MYTHILI GOPAL**, and **SAMPATH SUNDAR** willfully exported 377 i960 microprocessors to ADE in India without having first obtained a license from the Directorate of Defense Trade Controls, located in the District of Columbia.

(**Unlawful Export**, in violation of Title 22, United States Code, Section 2778(b)(2), Title 22, Code of Federal Regulations, Section 121.1, Category XI; **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

## COUNT TWELVE

1.      Paragraphs 1 through 6 of Count One of this Indictment and Paragraphs 2 through 7 of Count Ten of this Indictment are re-alleged as if fully set forth herein.

2.      On or about October 13, 2005, within the District of Columbia and elsewhere, defendants **PARTHASARATHY SUDARSHAN**, **MYTHILI GOPAL**, **AKN PRASAD**, and **SAMPATH SUNDAR** willfully exported 123 i960 microprocessors to ADE in India without having first obtained a license from the Directorate of Defense Trade Controls, located in the District of Columbia.

(**Unlawful Export**, in violation of Title 22, United States Code, Section 2778(b)(2), Title 22, Code of Federal Regulations, Section 121.1, Category XI; **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

## COUNT THIRTEEN

1.      Paragraphs 1 through 6 and 12 of Count One of this Indictment and Paragraphs 6 and 8 of Count Ten of this Indictment are re-alleged as if fully set forth herein.

2.      On or about January 14, 2006, within the District of Columbia and elsewhere, defendants **PARTHASARATHY SUDARSHAN**, **MYTHILI GOPAL**, **AKN PRASAD**, and **SAMPATH SUNDAR** willfully exported 100 M39014/01-1284 capacitors, 500 M39014/01-

1299 capacitors, 500 M39014/01-1317 capacitors, 800 M39014/01-1535 capacitors, and 600

M39014/01-1553 capacitors to VSSC in India without having first obtained a license from the

Directorate of Defense Trade Controls, located in the District of Columbia.

(**Unlawful Export**, in violation of Title 22, United States Code, Section 2778(b)(2), Title 22, Code of Federal Regulations, Section 121.1, Category XI; **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

## <u>COUNT FOURTEEN</u>

1.      Paragraphs 1 through 6 and 12 of Count One of this Indictment and Paragraphs 6

and 8 of Count Ten of this Indictment are re-alleged as if fully set forth herein.

2.      On or about April 7, 2006, within the District of Columbia and elsewhere,

defendants **PARTHASARATHY SUDARSHAN**, **MYTHILI GOPAL**, **AKN PRASAD**, and

**SAMPATH SUNDAR** willfully exported 500 M39014/01-1284 capacitors to VSSC in India

without having first obtained a license from the Directorate of Defense Trade Controls, located in

the District of Columbia.

(**Unlawful Export**, in violation of Title 22, United States Code, Section 2778(b)(2), Title 22, Code of Federal Regulations, Section 121.1, Category XI; **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

## COUNT FIFTEEN

1.       Paragraphs 1 through 4 and 9 through 19 of Count One of this Indictment and

Paragraphs 2 through 8 of Count Ten of this Indictment are re-alleged as if fully set forth herein.

2.       Beginning no later than November 2003 and continuing at least until September

2006, within the District of Columbia and elsewhere, defendants **PARTHASARATHY**

**SUDARSHAN** and **MYTHILI GOPAL**, knowingly and without prior notification to the

Attorney General in the District of Columbia, as required by law, acted in the United States as

agents of a foreign government, specifically the Government of India, in that defendants

**PARTHASARATHY SUDARSHAN** and **MYTHILI GOPAL**

(a)      communicated with and obtained direction from officials at VSSC, an

enterprise within the Department of Space of the Government of India, in the acquisition for

VSSC of restricted U.S. origin commodities, but without first obtaining the necessary licenses

from the Department of Commerce for export of these items to VSSC;

(b)      communicated with and obtained direction from officials at BDL, an

enterprise within the Ministry of Defence of the Government of India, in the acquisition for BDL

of restricted U.S. origin commodities, but without first obtaining the necessary licenses from the

Department of Commerce for export of these items to BDL;

(c)      communicated with and obtained direction from officials at ADE, an

enterprise within the Ministry of Defence of the Government of India, in the acquisition for ADE

of restricted U.S. origin commodities needed in the manufacture of the navigation and weapons

guidance systems of the Tejas Light Combat Aircraft, but without first obtaining the necessary

licenses from the Directorate of Defense Trade Controls for export of these items to ADE; and

(d)    communicated with and obtained direction from a Government of India

official in the District of Columbia as part of Cirrus' efforts to acquire for ADE restricted U.S.

origin commodities needed in the manufacture of the navigation and weapons guidance systems

of the Tejas Light Combat Aircraft, but without first obtaining the necessary licenses from

Directorate of Defense Trade Controls for export of these items to ADE.

**(Illegal Agent of a Foreign Government**, in violation of Title 18, United States Code, Section 951(a); **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2)

A TRUE BILL

FOREPERSON

Attorney of the United States in
and for the District of Columbia