UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NO. 07-051 (RMU) |
| v. | : | |
| **MYTHILI GOPAL,** | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MOTION TO MODIFY DEFENDANT GOPAL'S CONDITIONS OF RELEASE

Pursuant to 18 U.S.C. § 3145(a)(1), the United States of America, through its undersigned attorneys, moves to modify the conditions of release that Magistrate Judge William Catoe of the District of South Carolina imposed upon defendant Mythili Gopal. In particular, the government is seeking that the Court require Ms. Gopal to post the equity in 22 Redglobe Court, Simpsonville, South Carolina, as security for her release and that the Court place Ms. Gopal on electronic monitoring. In support of this motion, the government states as follows:

### Background

On the morning of March 23, 2007, FBI agents arrested Ms. Gopal at her home in Simpsonville, South Carolina, which is a suburb of Greenville, South Carolina. They arrested her on a warrant that Magistrate Judge Facciola had signed after the sealed return of the indictment in this case.[1] Later in the day on March 23, Ms. Gopal had her initial appearance in the District of South Carolina before Magistrate Judge William Catoe. Although the government requested that additional conditions be imposed, Magistrate Judge Catoe released Ms. Gopal on

---

[1] The Clerk's Office unsealed the indictment on the afternoon of March 23, 2007.

an unsecured $25,000 personal recognizance bond. The release order also required her to be in contact with Pretrial Services in Greenville, to remain in the District of South Carolina unless authorized by the Court to travel outside of that district, and to surrender her passport. Ms. Gopal appears to be in compliance with those conditions of release.

Ms. Gopal has been charged in a 15-count indictment with very serious offenses. In particular, the indictment charges her with violating the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1705, and the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774, with violating the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, and the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Parts 120-130, and with being an illegal agent of a foreign government in violation of 18 U.S.C. § 951.

The gravamen of the IEEPA and EAR charges (Counts 1 through 9) is that Ms. Gopal and her co-conspirators acquired in the United States critical electrical components for entities in India that are involved in the production of ballistic missiles.[2] They did so without obtaining the necessary licenses from the Department of Commerce. In order to conceal the true destination of the products, the defendants transshipped the items to India through Singapore. The particular export controls that the defendants violated are in place in order to stem the proliferation of nuclear weapons and the missile delivery systems for those weapons.

With respect to the AECA and ITAR charges (Counts 10-14), Ms. Gopal and her co-conspirators acquired microprocessors from a company in Massachusetts that the Government of

---

[2] For a detailed description of the charges in this case and the supporting evidence, the Court can review the Government's Memorandum in Support of Detention that the government filed in connection with its request to detain defendant Parthasarathy Sudarshan (Docket Entry No. 8).

India needed in the manufacture of an advanced fighter jet. The microprocessors were necessary for the plane's navigation and weapons guidance systems. Once again, the co-conspirators did not acquire the necessary licenses from the State Department for these exports. The State Department considers India to be a sensitive country and gives heightened review to requests to export defense articles to that nation. As with the ballistic missile components, the defendants further concealed their illicit shipments by sending the microprocessors to India through Singapore.

In acquiring the restricted commodities for India, Ms. Gopal acted in consultation with and under the direction of officials of the Government of India, including an official posted at the Embassy of India in Washington, D.C. Although acting as an agent of the Government of India, Ms. Gopal at no time gave the requisite notice to the Attorney General, thereby violating 18 U.S.C. § 951.

The case against Ms. Gopal is strong. It consists of intercepted communications, voluminous e-mails, and the testimony of vendors who dealt with her and the other defendants. Among other proof of wrongdoing, the government can demonstrate that, on more than one occasion, Ms. Gopal lied to vendors in the United States about the true destination of the goods that the conspirators were acquiring for their Indian customers. In another instance, Ms. Gopal falsely represented to a vendor that an official at the Department of Commerce told her that a particular commodity did not require a license for export to India. The export did require a license. Aside for the proof that the government assembled during its investigation of the defendants, Ms. Gopal, after waiving her *Miranda* rights, admitted to agents on March 23, 2007, that she had knowingly violated the law in acquiring electrical components for export to

restricted entities in India.

## Argument

In reviewing a magistrate judge's release order, the Court uses a *de novo* standard.  See United States v. Hudspeth, 143 F. Supp.2d 32, 35-36 (D. D.C. 2001) (Kennedy, J.) and the cases cited therein.

At the outset, the government acknowledges that Ms. Gopal has strong ties to the United States.  She has lived here for approximately nine years and is a lawful permanent resident.  Her husband has a legitimate job with a software company in the Greenville area, and he appears to have had no role in the illegal export scheme.  Ms. Gopal also has a child who lives with her and her husband.  For these reasons, the government did not request that she be detained pending trial.

Notwithstanding these strong ties, Ms. Gopal still presents some risk of flight.  She faces multiple counts of conviction and the potential for a lengthy period of incarceration.  The base offense level under the advisory sentencing guidelines for both the IEEPA and the AECA charges is 26.  See §§ 2M5.1 and 2M5.2.  Without any other enhancements, Ms. Gopal faces an advisory sentencing range of 63-78 months.

Ms. Gopal is an Indian national, and she continues to have family ties there.  India does have an extradition treaty with the United States.  It makes an offense extraditable so long as "it is punishable under the laws in both Contracting States by deprivation of liberty, including imprisonment, for a period of more than one year . . . ." Extradition Treaty between the Government of the United States of America and the Government of the Republic of India, art. 2, ¶ 1.  However, the offense for which either nation is seeking extradition must be a crime in both

countries or, put differently, there must be dual criminality. India is not subject to the same nuclear non-proliferation treaties that give rise to the obligation of the United States to maintain the export controls at issue in this prosecution. It is the opinion of Department of Justice's Office of International Affairs ("OIA") that there is an absence of dual criminality with India for the charges in this case and that India would decline to extradite Ms. Gopal. In addition, according to OIA, even when India has agreed to extradite a defendant to the United States, the process is very time consuming. The United States is currently awaiting the extradition of a homicide defendant whose extradition this country requested in 1999.

In light of the above, the $25,000 personal recognizance bond that the magistrate judge in the District of South Carolina imposed is insufficient to safeguard Ms. Gopal's continued presence for this case. The conditions that the government is suggesting – posting the equity of the Gopal home as security and placing Ms. Gopal under electronic monitoring – impose minimal restrictions on her liberty and provide, albeit not perfectly, some assurance that she will continue to appear in Court as required.

**Conclusion**

For the foregoing reasons, the Court should grant the government's motion to modify defendant Gopal's conditions of release.

                                            Respectfully submitted,

                                            JEFFREY A. TAYLOR
                                            UNITED STATES ATTORNEY
                                            D.C. Bar No. 498610

By:                      /s/
               Jay I. Bratt
               Assistant United States Attorney
               Illinois Bar No. 6187361
               National Security Section
               Room 11-437
               555 Fourth Street, NW
               Washington, D.C.  20530
               (202) 353-3602
               Jay.Bratt@usdoj.gov

**Certificate of Service**

I, Jay I. Bratt, certify that I served a copy of the foregoing Government's Motion to Modify Defendant Gopal's Conditions of Release on John M. Read, IV, by electronic mail to jack@readlawfirm.com and on Anjali Chaturvedi by electronic mail to achaturvedi@nixonpeabody.com this 13th day of April, 2007.

                                                      /s/
                                            Jay I. Bratt

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 07-051 (RMU) |
| v. | : | |
| MYTHILI GOPAL, | : | |
| Defendant. | : | |

### ORDER

Before the Court is the government's motion to modify the conditions of release for defendant Mythili Gopal. The Court having considered the government's motion and the arguments of the parties, it hereby **GRANTS** the motion.

Within ten (10) days, defendant Gopal shall post the home at 22 Redglobe Court, Simpsonville, South Carolina, subject to any liens and other security interests, as security with Clerk of the Court.

In addition, upon Ms. Gopal's return to South Carolina, Pretrial Services in the District of South Carolina shall fit her with an electronic monitoring device.

**DONE AND ORDERED** this _____ day of April, 2007.

_____
Honorable Ricardo M. Urbina
United States District Judge