UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 07-0051 (RMU)** |
| | ) | |
| **PARTHASARATHY SUDARSHAN,** | ) | |
| ***et al.,*** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

---

**DEFENDANT PARTHASARATHY SUDARSHAN'S MOTION
TO SUPPRESS EVIDENCE OBTAINED PURSUANT TO
<u>THE FOREIGN INTELLIGENCE SURVEILLANCE ACT</u>**

Defendant Parthasarathy Sudarshan, through counsel, hereby moves this Court, pursuant to 50 U.S.C.S. § 1806(e)(2000), to suppress the electronic surveillance evidence obtained pursuant to the Foreign Intelligence Surveillance Act of 1978, <u>as amended</u>, 50 U.S.C. §§ 1801 <u>et</u> <u>seq.</u> (2000 & Supp. III 2003), that the government intends to offer against Mr. Sudarshan at trial because it was unlawfully acquired.

Defendant respectfully requests oral argument on this motion. A proposed Order is attached.

Respectfully submitted,

_R. Hess_
_____
Reid H. Weingarten (D.C. Bar #365893)
William T. Hassler (D.C. Bar #366916)
Robert A. Ayers (D.C. Bar # 488284)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795
(202) 429-3000

*Counsel for Parthasarathy Sudarshan*

November 15, 2007

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Criminal No. 07-0051 (RMU)** |
| ) | |
| **PARTHASARATHY SUDARSHAN,** ) | |
| *et al.,* ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PARTHASARATHY
SUDARSHAN'S MOTION TO SUPPRESS EVIDENCE OBTAINED
PURSUANT TO THE FOREIGN INTELLIGENCE SURVEILLANCE ACT**

**I.      INTRODUCTION**

The Court should suppress the electronic surveillance evidence it intends to offer
against Mr. Sudarshan at trial because the Order permitting the government to conduct
warrantless electronic surveillance of Mr. Sudarshan's home, business and cell phone, pursuant
to the Foreign Intelligence Surveillance Act of 1978, as amended, 50 U.S.C. §§ 1801 et seq.
(2000 & Supp. III 2003) ("FISA"), was issued in error.  Specifically, the government could not
have presented the Federal Intelligence Surveillance Court ("FISC") with a statement of
legitimate facts and circumstances sufficient to permit the FISC to properly conclude that
probable cause existed to believe that Mr. Sudarshan was an agent of a foreign power, as
required by 50 U.S.C. § 1805(a)(3)(A).  Accordingly, the Court should suppress the evidence
obtained or derived from the electronic surveillance authorized by the FISC Order that the
government intends to offer against Mr. Sudarshan.

## II.     BACKGROUND

According to the Indictment, Mr. Sudarshan founded Cirrus Electronics ("Cirrus") in Singapore in 1997.  Cirrus was in the business of acquiring obsolete or hard to find electronic components for a variety of customers located primarily in Singapore and India.  The electronic components that Cirrus dealt in were publicly available, but often very difficult for end users to locate in sufficient quantities or at reasonable prices.  Cirrus generally served either as a middleman responsible for locating the items and negotiating with suppliers to meet customers' target price, or as a readily available source of discontinued or obsolete parts that allowed end users to avoid searching multiple sources for various parts.  Cirrus maintained offices in Singapore and India, and opened an office in the United States, in Simpsonville, South Carolina, in 2003.  Among Cirrus' customers were entities controlled by the government of India.

On October 31, 2007, a District of Columbia federal grand jury returned a fifteen count Superseding Indictment ("Indictment") charging Mr. Sudarshan and two other Cirrus employees, Akn Prasad and Sampath Sundar, with conspiring to export and exporting or aiding and abetting or causing the export of electronic components from the United States to entities within the government of India without licenses required by the United States Department of Commerce ("DOC") (Counts One though Nine) or the United States Department of State, Directorate of Defense Trade Controls ("DDTC") (Counts Ten through Fourteen), in violation of 18 U.S.C. § 371 (Counts One and Ten), 50 U.S.C.A. § 1705 (Counts Two Through Nine), Executive Order 13222 (Counts Two through Nine), 15 C.F.R. pts. 730-774 (Counts Two through Nine), 22 U.S.C. § 2778 (Counts Eleven through Fourteen), 22 C.F.R. pts. 120-130 (Counts Eleven through Fourteen) and 18 U.S.C. § 2 (Counts Two through Nine and Eleven through Fourteen).  Indict. at 16-19, 29-30.  Count Fifteen of the Indictment alleges that

Mr. Sudarshan acted, or aided and abetted or caused another to act, in the United States as an agent of the government of India, in violation of 18 U.S.C. § 951(a) and 18 U.S.C. § 2. Indict. at 31-32. Defendants Prasad and Sundar remain at-large outside the United States and the government has represented that it is unlikely it will secure their appearance at trial.

On March 23, 2007, during his arraignment, the government notified Mr. Sudarshan that it "intends to enter into evidence, or otherwise use or disclose at pretrial hearings, trial, and at other proceedings in this case, information derived from electronic surveillance conducted pursuant to the Foreign Intelligence Surveillance Act of 1978." Notice Of Intent To Use [FISA] Information at 1. This was the first notice Mr. Sudarshan received that his home, business and cell phone had been under electronic surveillance.

On June 1, 2007, pursuant to Fed. R. Crim. P. 16(a)(1), the government produced a compact disk containing 357 intercepted telephone calls that it may use at trial. See Ex. A (Letter from AUSA Jay I. Bratt to Beattie B. Ashmore and Joseph W. Clark, (June 1, 2007)). The government has denied Mr. Sudarshan personal access to the remaining roughly 9,600 intercepted telephone calls (even those in which Mr. Sudarshan is a participant) because the Federal Bureau of Information ("FBI") contends that they contain classified information. See Ex. B (Letter from AUSA Jay I. Bratt to William T. Hassler (Oct. 12, 2007)).[1]

---

[1] Defense counsel recently obtained security clearance on October 23, 2007, and have not had an opportunity to review the classified intercepts. However, because a large number of the calls are in Tamil, defense counsel will be unable to determine the content of a significant portion of the intercepted telephone calls. For that reason, among others, Defendant has separately filed a motion seeking access to the intercepted calls in which he is a participant. See Defendant Parthasarathy Sudarshan's Motion For Personal Access To Classified Intercepts, Or, In The Alternative, For Pretrial Conference Under Classified Information Procedures Act Section 2. Discussions are ongoing between Defendant and the Department of Justice regarding whether the FBI will agree voluntarily to declassify selected tapes of interest.

The date range of the 357 calls produced (June 15, 2005 to April 27, 2006) indicates that the FISA electronic surveillance of Mr. Sudarshan's home, business and cell phone occurred for at least ten months. Such a warrantless intrusion into Mr. Sudarshan's home and family should occur only in accordance with strict compliance with the requirements of FISA, 50 U.S.C. §§ 1804-05. The electronic surveillance targeted at Mr. Sudarshan, however, was not because there were no legitimate facts and circumstances the FBI could have presented to the FISC to establish probable cause to believe that Mr. Sudarshan was an agent of a foreign power.

## III.    FOREIGN INTELLIGENCE SURVEILLANCE ACT

Congress enacted FISA in 1978 in response to three related concerns:

(1) the judicial confusion over the existence, nature and scope of a foreign intelligence exception to the Fourth Amendment's warrant requirement that arose in the wake of the Supreme Court's 1972 decision in United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); (2) the Congressional concern over perceived Executive Branch abuses of such an exception; and (3) the felt need to provide the Executive Branch with an appropriate means to investigate and counter foreign intelligence threats. FISA accommodates these concerns by establishing a detailed process the Executive Branch must follow to obtain orders allowing it to collect foreign intelligence information "without violating the rights of citizens of the United States."

United States v. Rosen, 447 F. Supp. 2d 538, 542-43 (E.D. Va. 2006) (quoting United States v. Hammoud, 381 F.3d 316, 332 (4th Cir. 2004) (en banc), vacated on other grounds, 543 U.S. 1097 (2005), reinstated in pertinent part, 405 F.3d 1034 (4th Cir. 2005)) (footnotes omitted).

To obtain a FISA order, a federal officer must submit an application, which must first be approved by the Attorney General, to one of seven FISC judges. 50 U.S.C.A. § 1804(a). "The application must detail among other things the identity of the target; the information relied on by the Government to demonstrate that the target is a 'foreign power' or an 'agent of a foreign

power;' evidence that the place where the surveillance will occur is being used, or is about to be

used, by the foreign power or its agent; the type of surveillance to be used; the minimization

procedures to be employed; and certification that the information being sought is 'foreign

intelligence information.'" United States v. Belfield, 692 F.2d 141, 145-46 (D.C. Cir. 1982)

(citing and quoting 50 U.S.C. § 1804(a)(1)-(11)).  Before issuing the FISA order, the FISC must

find that the application contains proper minimization procedures and there is probable cause to

believe that "the target of the electronic surveillance is a foreign power or an agent of a foreign

power"[2] and that the places at which the electronic surveillance is to occur is being or will be

used by a foreign power or agent of a foreign power.  692 F.2d at 146 (quoting 50 U.S.C.

§ 1805(a)(3)).

   If the government intends to offer evidence obtained or derived from the

electronic surveillance against a criminal defendant, it must adhere to the procedures outlined in

50 U.S.C. § 1806.  First, the government must obtain authorization for the Attorney General to

use the information in a criminal proceeding.  50 U.S.C. § 1806(b).[3]  The government must then

notify the court and the aggrieved person against whom the information will be offered.  Id.

---

[2] 692 F.2d at 146.  For "United States person[s]," the probable cause determination that the target is a foreign power or an agent of a foreign power cannot be based solely on activities protected by the First Amendment to the Constitution of the United States.  50 U.S.C. § 1805(a)(3)(A).  The FISA defines a "'United States person'" as "a citizen of the United States, [or] an alien lawfully admitted for permanent residence. . . ." Id. § 1801(i).  Consequently, Mr. Sudarshan is not a "United States person" for the purposes of FISA.

[3] 50 U.S.C. § 1806(b) states:  "No information acquired pursuant to this title [50 U.S.C. §§ 1801 et seq.] shall be disclosed for law enforcement purposes unless such disclosure is accompanied by a statement that such information, or any information derived therefrom, may only be used in a criminal proceeding with the advance authorization of the Attorney General." To date, the government has not presented the "statement for disclosure" required by 50 U.S.C. § 1806(b) to either the Court or Mr. Sudarshan.  Mr. Sudarshan respectfully requests that the Court order the government to produce the "statement for disclosure" to ensure that the government has obtained the Attorney General's pre-authorization to use the electronic surveillance information in this criminal proceeding.

§ 1806(c).  The government provided such notice to Mr. Sudarshan on March 23, 2007, and filed

that notice with the Court on April 16, 2007.

        Pursuant to 50 U.S.C. § 1806(e), "[a]ny person against whom evidence obtained

or derived from an electronic surveillance to which he is an aggrieved person is to be, or has

been, introduced or otherwise used or disclosed in any trial, hearing, or other proceeding in or

before any court . . . may move to suppress the evidence obtained or derived from such electronic

surveillance on the grounds that . . . (1) the information was unlawfully acquired; or (2) the

surveillance was not made in conformity with an order of authorization or approval."  Id.  The

court is required to grant a motion to suppress the evidence if it determines that the surveillance

was not lawfully authorized or conducted.  50 U.S.C. § 1806(g).[4]  Accordingly, if the Court's

review of the FISA application in this case reveals that the FISC Order was issued in error, the

Court must grant Mr. Sudarshan's motion to suppress the FISA evidence the government intends

to offer against him at trial.

---

[4] The Court's determination as to whether the electronic surveillance was lawful can be made in an open court adversarial hearing unless the "Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States. . . ."  50 U.S.C. § 1806(f).  If the Attorney General files such an affidavit, the court must:

> review in camera and ex parte the application, order and other such materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted.  In making this determination, the court may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance.

Id.

**IV.    ARGUMENT**

      **A.    The Court Should Conduct A <u>De Novo</u> Determination Whether There Is Probable Cause To Believe That Mr. Sudarshan Is An Agent Of A Foreign Power**

      Pursuant to 50 U.S.C. § 1805(a)(3)(A), the FISC must determine whether there is probable cause to believe the target is either a "foreign power" or the "agent" of a foreign power. The electronic surveillance at issue was of Mr. Sudarshan's home, business and cell phone, therefore, Mr. Sudarshan was the target of the surveillance, not a "foreign power." Consequently, the intercept in this case is valid only if the government submitted facts to the FISC sufficient to establish probable cause to believe that the target of the surveillance -- Mr. Sudarshan -- is an agent of a foreign power and that he was using his home and business office as an agent of a foreign power. 50 U.S.C. § 1804(a)(4). In determining whether or not probable cause exists for purposes of an order under subsection (a)(3), a judge may consider "past activities of the target, as well as facts and circumstances relating to current or future activities of the target." <u>Id.</u> § 1805(b).

      Because the vast majority, if not the entirety, of FISA orders challenged by aggrieved persons are reviewed <u>ex parte</u>, the court's review of a FISC determination of probable cause is properly <u>de novo</u>. <u>Rosen</u>, 447 F. Supp. 2d at 545 (rejecting government's argument that court must give "'substantial deference'" to FISC determination of probable cause, "especially given that the review is <u>ex parte</u> and thus unaided by the adversarial process") (citations omitted). Indeed, because the other government certifications contained in the FISA application are presumed valid, the court's review of probable cause is paramount because it is the only meaningful review to which an aggrieved person is entitled. 50 U.S.C. § 1805(a)(5) (FISC must

find merely that all statements and certifications required by section 1804 have been made before issuing FISA order).

The court's <u>de novo</u> review of probable cause also is necessary to ensure that the Fourth Amendment rights against unreasonable search and seizure of targets of FISA electronic surveillance are protected. The FISA application process, in the name of national security, affords targets of electronic surveillance less Fourth Amendment protection than ordinary criminal search warrants or Title III electronic surveillance warrants. <u>See</u>, <u>e.g.</u>, <u>In re Kevork</u>, 634 F. Supp. 1002, 1011 (C.D. Cal. 1985) ("[W]hen electronic surveillance is to be used, not for detecting crimes, but for intelligence purposes, a different set of protections may be applied consistent with the Fourth Amendment."), <u>aff'd</u>, 788 F.2d 566 (9th Cir. 1986); S. Rep. No. 95-701, at 14 (1978) ("The departures here from conventional Fourth Amendment doctrine have, therefore, been given close scrutiny to ensure that the procedures established in [FISA] are reasonable in relation to legitimate foreign counterintelligence requirements and the protected rights of individuals . . . . The differences between ordinary criminal investigations to gather evidence of specific crimes and foreign counterintelligence investigations to uncover and monitor clandestine activities have been taken into account."), <u>reprinted in</u> 1978 U.S.C.C.A.N. 3973, 3983; <u>United States v. Falvey</u>, 540 F. Supp. 1306, 1313-14 (E.D.N.Y. 1982).

Accordingly, it is paramount to the protection of Mr. Sudarshan's Fourth Amendment rights that the Court review the FISA application <u>de novo</u> to determine whether the government has met its minimal burden of showing probable cause that Mr. Sudarshan was an agent of a foreign power and that the places under surveillance were being or were going to be used by a foreign power or an agent of a foreign power. Such a review will reveal that the government failed to do so, and the FISC finding of probable cause was made in error.

**B.**    **The FISC Determination That Probable Cause Existed To Believe**
**Mr. Sudarshan Was An Agent Of A Foreign Power Made In Was Error**

Section 1801(b) of Title 50 sets specific criteria (eight in all) that define whether a

potential subject is an "agent of a foreign power" for purposes of FISA.  According to Section

1801(b), such an agent is defined as:

> (1) any person other than a United States person, who --
>     (A) acts in the United States as an officer or employee of a
> foreign power, or as a member of a foreign power as defined in
> subsection (a)(4) [group engaged in terrorist activities];
>     (B) acts for or on behalf of a foreign power which engages
> in clandestine intelligence activities in the United States . . . when
> the circumstances of such person's presence in the United States
> indicate that such person may engage in such activities in the
> United States, or when such person knowingly aids or abets any
> person in the conduct of such activities or knowingly conspires
> with any person to engage in such activities; or
>     (C) engages in international terrorism or activities in
> preparation therefore; or
> (2) any person who --
>     (A) knowingly engages in clandestine intelligence
> gathering activities for or on behalf of a foreign power . . .;
>     (B) pursuant to the direction of an intelligence service or
> network of a foreign power, knowingly engages in any other
> clandestine intelligence activities for or on behalf of such foreign
> power . . .;
>     (C) knowingly engages in sabotage or international
> terrorism, or activities that are in preparation therefore, for or on
> behalf of a foreign power;
>     (D) knowingly enters the United States under a false or
> fraudulent identity for or on behalf of a foreign power or, while in
> the United States, knowingly assumes a false or fraudulent identity
> on behalf of a foreign power; or
>     (E) knowingly aids or abets any person in the conduct of
> activities described in subparagraph (A), (B), or (C) or knowingly
> conspires with any person to engage in activities described in
> subparagraph (A), (B) or (C).

Id.

There is no evidence or even allegation in this case that Mr. Sudarshan has ever

been involved in acts of sabotage or international terrorism, and has never used or assumed a

- 10 -

false identity.  Thus, the electronic surveillance could not have been lawfully targeted at

Mr. Sudarshan as an agent of a foreign power pursuant to subsections (b)(1)(C), (b)(2)(C) or

(b)(2)(D).  Similarly, the government has not alleged -- nor can it -- that Mr. Sudarshan was an

"officer" or "employee" of a foreign power at the time the FBI submitted the FISA electronic

surveillance application to the FISC.  50 U.S.C. § 1801(b)(1)(A).  Consequently, to have

properly issued the order authorizing the electronic surveillance of Mr. Sudarshan's home, the

FISC was required to determine that probable cause existed to believe that Mr. Sudarshan

knowingly engaged or conspired to engage in "clandestine intelligence activities" or acted on

behalf of a foreign power that engaged in "clandestine intelligence activities" when the

circumstances of his presence in the United States indicated he may engage in such activities.

50 U.S.C. § 1801(b)(1)(B), 1801(b)(2)(A), 1801(b)(2)(B), and 1801(b)(2)(E).

      It is well-established that "clandestine intelligence activities" generally are

activities other than public, commercial activities like those Mr. Sudarshan allegedly engaged in.

"Although the phrase 'clandestine intelligence gathering activities' is not defined in FISA, the

legislative history demonstrates that the drafters viewed these 'activities' in light of the criminal

espionage laws, including 18 U.S.C. §§ 793 and 794, and considered that such 'activities' would

include, for example, 'collection or transmission of information or material that is not generally

available to the public.'"  Rosen, 447 F. Supp. 2d at 547 (citing S. Rep. No. 95-701, at 21-22),

reprinted in 1978 U.S.C.C.A.N. at 3990-91.  According to Rosen:

> [t]he Senate Intelligence Report states:  "The agent must also be
> knowingly engaged in 'clandestine intelligence gathering
> activities' that involve or may involve violations of federal
> criminal law.  It is anticipated that most of the persons under
> surveillance under this subparagraph will be violating the criminal
> espionage laws which appear in Title 18, U.S.C. §§ 792-99; Title
> 42, U.S.C. §§ 2272-2278B; and Title 50, U.S.C. § 855."

- 11 -

Id. at 547 n.12 (quoting S. Rep. No. 95-701, at 21 (emphasis added), reprinted in 1978

U.S.C.C.A.N. at 3990).[5]

       Thus, the legislative history makes clear that the purpose of FISA was to protect

the United States against foreign powers and their agents seeking to obtain restricted information

relating to topics such as national defense (18 U.S.C. §§ 792-99) and atomic energy (42 U.S.C.

§§ 2272-2278B), and to monitor those involved in foreign espionage (50 U.S.C. § 855). The

purpose of FISA, however, is not to monitor foreign businessmen who deal solely in publicly

available electronic parts and have no access to sensitive information harmful to the U.S.

government.

       The allegations in the Indictment or supporting materials reveal no evidence that

Mr. Sudarshan was involved in "clandestine intelligence activities." The relevant objects of the

two conspiracy charges allege that Mr. Sudarshan conspired "to supply Government of India

enterprises on the Entity list with critical electronic components needed in the production of

missiles and missile launch vehicles," Indict. at 6, and "to supply ADE with a critical

component in the navigation and weapons guidance systems of the Government of India's Tejas

---

[5] The legislative history further states:

> [F]oreign counterintelligence surveillance of unofficial visitors to
> the United States must meet the same probable cause standard as
> surveillance of U.S. persons, unless they act on behalf of particular
> foreign governments which engage in clandestine intelligence
> activities contrary to U.S. interests. Such surveillance is limited to
> persons who, on the basis of past experience with a particular
> foreign government, are reasonably believed to have clandestine
> intelligence assignments from the foreign government. It is
> intended to apply to visitors acting for foreign governments such as
> the Soviet Union which have used such visitors to the United
> States for clandestine intelligence purposes. This provision is
> tailored to demonstrated foreign counterintelligence requirements.

S. Rep. No. 95-701, at 13 (emphasis added), reprinted in 1978 U.S.C.C.A.N. at 3982.

Light Combat Aircraft," Indict. at 22. Documents produced to date by the government show

numerous commercial transactions conducted by normal business means -- email, fax and letter.

The Indictment fails to allege -- because no facts exist to support the allegation -- that

Mr. Sudarshan was engaged in activities involving acquiring or disclosing protected information

relating to the security of the United States, or otherwise implicating espionage laws. See

S. Rep. No. 95-701, at 21, reprinted in 1978 U.S.C.C.A.N. at 3990. Nor do supporting materials.

> While the government alleges in the Indictment that the export of the electronic

items to the government of India entities required Department of Commerce or Department of

State export licenses, the components at issue were available from commercial vendors who

advertised and sold products widely on the open market. See, e.g., Indict. at 4 (Static Random

Access Memory chips "SRAMs" available from commercial vendor in Phoenix, Arizona); id. at

4-5 (SRAMs available from commercial vendor in Austin, Texas); id. at 21 (i960 microprocessor

available from commercial vendor in Newburyport, Massachusetts). In essence, Mr. Sudarshan

is charged with "smuggling" -- i.e., with illegally shipping to his foreign-based customers widely

used electronic components that allegedly are controlled under U.S. export regulations. That is a

far cry from collecting or transmitting protected or sensitive information that was not publicly

available to a foreign power, or, in other words, "'clandestine intelligence gathering activities.'"

See Rosen, 447 F. Supp. 2d at 547 (citing S. Rep. No. 95-701, at 21-22, reprinted in 1978

U.S.C.C.A.N. at 3990-91).

> The facts concerning Mr. Sudarshan's activities in the United States, even when

viewed in the worst possible light, do not constitute "clandestine intelligence activities."

Accordingly, the facts of this case do not justify the FISC determination that Mr. Sudarshan was

an agent of a foreign power as defined under FISA. It logically follows that because

Mr. Sudarshan was not an agent of a foreign power, the FISC also lacked sufficient facts to find

probable cause to believe Mr. Sudarshan's home was being used, or about to be used, by an

agent of a foreign government, as required by 50 U.S.C. § 1805(a)(3)(B).  Accordingly, both of

the FISC probable cause determinations were error, and the evidence obtained or derived from

the unlawful electronic surveillance of Mr. Sudarshan's home, business and cell phone should be

suppressed.

C.    **The Interests of National Security Do Not Trump The Fourth Amendment
Protections FISA Affords Targets Of Electronic Surveillance**

Courts have long held that a lower level of scrutiny applies to electronic

surveillance conducted primarily for foreign intelligence purposes than that applied to criminal

search warrants issued under traditional Fourth Amendment standards.  See, e.g., United States

v. Truong Dinh Hung, 629 F.2d 908, 912-15 (4th Cir. 1980) (Fourth Amendment warrant

requirement does not apply to electronic surveillance conducted for foreign intelligence

purposes); United States v. Buck, 548 F.2d 871, 875-76 (9th Cir. 1977) (same); United States v.

Butenko, 494 F.2d 593 (3d Cir. 1973) (same).  FISA, however, cannot be used as a means to

avoid traditional warrant requirements where -- as here -- it does not apply.  As courts have held,

FISA was designed for a specific purpose:  "'to curb the practice by which the Executive Branch

may conduct warrantless electronic surveillance on its own unilateral determination that national

security justifies it,' while providing for the orderly continuation of 'the legitimate use of

electronic surveillance to obtain foreign intelligence information.'"  United States v. Megahey,

553 F. Supp. 1180, 1184 (E.D.N.Y. 1982) (ellipsis omitted in original) (quoting S. Rep. No. 95-

604 (1978), reprinted in 1978 U.S.C.C.A.N. 3904, 3910), aff'd, 743 F.2d 59 (2d Cir. 1984).

Congress' determination that the government's need for "foreign intelligence" information may

under specific circumstances (terrorism, sabotage, or espionage activities) justify electronic

surveillance of personal communications does not allow the government to disregard the traditional standards of the Fourth Amendment and Title III where those circumstances are absent.

If the government could not establish the probable cause required for a FISA warrant, it was free to pursue a Title III warrant.[6]  Notably, however, the showing of probable cause the government must establish to obtain a Title III warrant affords a target of electronic surveillance greater Fourth Amendment protection than that required for a FISA order.  See Falvey, 540 F. Supp. at 1313 ("[W]hile an order for surveillance under Title III can be signed only if the judge finds 'probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense . . .' (18 U.S.C. § 2518(3)(a)), FISA requires only that the judge find 'probable cause to believe that the target of the electronic surveillance is . . . an agent of a foreign power,' 50 U.S.C. § 1805(a)(3)(A)."); In re Sealed Case No. 02-001, 310 F.3d 717, 740 (FISC 2002) (recognizing that Title III probable cause requires nexus between the facility to be searched and the commission of a crime and FISA does not).  Indeed, the definition of an "agent of a foreign power" in 50 U.S.C. § 1801(b)(1)(B) for targets who are not "United States persons" permits the government to obtain a FISC Order by showing merely that the target is involved in "clandestine intelligence activities," with no nexus to criminal activities required. The government in this case consciously elected not to pursue a Title III warrant and must live with the consequences -- suppression of the unlawfully obtained electronic surveillance evidence it seeks to use against Mr. Sudarshan at trial (as well as any other, derivative evidence).

---

[6] Indeed, 18 U.S.C. 2516(1)(k) (2000) authorizes interception of wire, oral, or electronic communications when such communications may provide evidence of "any criminal violation of section 2778 of Title 22 (relating to the Arms Export Control Act)."

- 15 -

The FISC determination that probable cause exists to believe the target of the electronic surveillance is an agent of a foreign power is the only portion of the government's FISA application subject to meaningful review.  <u>See</u> 50 U.S.C. § 1805(a)(5) (FISC must find merely that all statements and certifications required by section 1804 have been made before issuing FISA order.); <u>United States v. Duggan</u>, 743 F.2d 59, 77 n.6 (2d Cir. 1984) ("[T]he representations and certifications submitted in support of an application for FISA surveillance should be presumed valid.").  It is therefore imperative to the Fourth Amendment protections that Congress, in enacting FISA, afforded to targets of electronic surveillance in the context of foreign intelligence that, when FISA orders are challenged, courts ensure probable cause exists to believe the target is an agent of a foreign power.  The Court's <u>de novo</u> review of the statement of facts presented to the FISC in this case should reveal that the accurate facts contained in the FISA application were insufficient to support a determination that probable cause existed to believe Mr. Sudarshan was an agent of a foreign power.  Consequently, the FISA electronic surveillance was unlawful and the Court should suppress the evidence obtained or derived from the unlawful surveillance, pursuant to 50 U.S.C. § 1806(g).

## V.    CONCLUSION

For the foregoing reasons, the Court should suppress all evidence obtained or derived from the electronic surveillance of Mr. Sudarshan authorized by the Foreign Intelligence Surveillance Act that the government seeks to use against Mr. Sudarshan at trial.

Respectfully submitted,

_R. HEBB_

_____

Reid H. Weingarten (D.C. Bar #365893)
William T. Hassler (D.C. Bar #366916)
Robert A. Ayers (D.C. Bar # 488284)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
(202) 429-3000
Counsel for Parthasarathy Sudarshan

November 15, 2007

- 17 -

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| v. ) | **Criminal No. 07-0051 (RMU)** |
| ) | |
| **PARTHASARATHY SUDARSHAN,** ) | |
| **_et al._,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

**<u>ORDER</u>**

        Upon consideration of Defendant Parthasarathy Sudarshan's Motion To Suppress

Evidence Obtained Pursuant To The Foreign Intelligence Surveillance Act, the Government's

Opposition and Defendant's Reply thereto, it is HEREBY ORDERED that Defendant's motion

is GRANTED, and all evidence obtained pursuant to the Foreign Intelligence Surveillance Court

Order authorizing the electronic surveillance of Mr. Sudarshan will be precluded at trial.

        SO ORDERED.

                                      _____
                                      Ricardo M. Urbina
                                      UNITED STATES DISTRICT JUDGE

copies to:

Jay I. Bratt
Assistant United States Attorney
National Security Section
555 Fourth Street, NW
Washington, D.C.  20530

Reid H. Weingarten
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795

Anjali Chaturvedi
Nixon Peabody, LLP
401 9th Street, NW
Suite 900
Washington, DC  20004-2128

# EXHIBIT A



U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

_____

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

June 1, 2007

BY HAND DELIVERY TO LOCAL COUNSEL

Beattie B. Ashmore, Esq.
644 East Washington Street
Greenville, SC 29601

Joseph W. Clark, Esq.
Jones Day
51 Louisiana Avenue, NW
Washington, D.C. 20001

      Re:    United States v. Parthasarathy Sudarshan, et al., Cr. No. 07-051 (RMU)

Dear Counsel:

      Pursuant to your requests for discovery under Rule 16(a)(1), Fed. R. Crim. P., the government is providing the following information and materials:

**Defendant's Statements**

      By letter dated April 13, 2007, I provided you with the FBI 302 that memorializes Mr. Sudarshan's interview with FBI agents on March 23, 2007, along with his signed statement and waiver of rights form. Written statements of Mr. Sudarshan also appear on the disks that I describe more fully below. Recorded statements of Mr. Sudarshan appear on the disk containing intercepted phone calls that I am providing with this letter and that I also describe below. Other statements of Mr. Sudarshan may appear in the classified materials. Please advise me once you have your clearances and we can discuss the classified items at greater length.

**Defendant's Prior Record**

The government is unaware of any prior convictions for Mr. Sudarshan.

**Documents and Objects**

Enclosed with this letter are 34 disks. One of the disks is labeled "CI." On this disk are the documents that the government is presently likely to use in its case-in-chief at trial. The investigation is continuing and our review of all materials in our possession is ongoing. Accordingly, the government may add or subtract from the items it intends to use at trial. The government will inform the defense as changes are made to the group of likely trial exhibits. In addition, the government likely will be producing more materials to the defense as the government obtains other records pertinent to the charges in the indictment or pertinent to any new charges that the government may seek to bring.

Another disk is labeled "Emails." This disk contains e-mails that the government has obtained from the account cirruselectronics@gmail.com.

The remaining disks are identified as follows:

1A
1B011
1B016
1B017
1B018
1B019
1B020
1B021
1B025
1B028
1B029
1B030
1B031
1B032
1B033
1B034
1B035
1B036
1B039
1B040
1B041
1B042
1B043
1B044

       1B046
       1B047
       1B048
       1B049
       1B050
       1B051
       1B064

The "1A" and "1B" prefixes refer to the alpha-numeric system that the FBI uses to maintain custody and control of items that it obtains during the course of an investigation. The items on any one disk do not use all of the available disk space. In fact, some of the disks have relatively few files on them. There will be some overlap between items that are on the "1A" and "1B" disks and the items on the "CI" disk. Each disk contains both a pdf file of all of the contents on the disk as well as individual tif files of each item on the disk. It is possible to do key word searches in the pdf file.

I also am enclosing with this letter a disk labeled "Cirrus Phone Calls." This disk contains the 357 intercepted phone calls that the government may use in its case-in-chief. The calls are organized in chronological order, according to the year, the date, and the time as expressed in military time. Many of these calls are in Tamil.

Also accompanying this letter are 9 computer hard drives. The contents of these hard drives are described below:

(1)     Hard drive labeled 1B3: a mirror image of an HP CPU Serial # CNH6282LNF;
(2)     Hard drive labeled 1B5: a mirror image of a Toshiba Laptop Serial # 63121030P and mirror images of miscellaneous electronic storage media;
(3)     A second hard drive labeled 1B5 with a continuation of the data described above;
(4)     Hard drive labeled 1B5-A: a mirror image of a Mini Tower HP CPU Serial # 7046FR4Z0928;
(5)     Hard drive labeled 1B6: a mirror image of a Compaq CPU Serial # 7139KF920707;
(6)     Hard drive labeled 1B8: a mirror image of a Sony Laptop Serial # 28247235;
(7)     Hard drive labeled 1B62: a mirror image of an HP Pavilion Computer Serial # MXK5260SR5;
(8)     Hard drive labeled 1B63: a mirror image of an Sony laptop Serial # C300EJH9; and
(9)     Hard drive labeled 1B4: a mirror image of a Toshiba Laptop with the serial number of 25388694K.

There are four additional hard drives that remain for the FBI to copy. They should be available next week. However, with this letter, you will have copies of all of the electronic media that the government considers significant to its case.

**Search Warrants and Supporting Affidavits**

Assistant United States Attorney Max Cauthen in the District of South Carolina previously provided Mr. Ashmore with copies of the search warrants and supporting affidavits for the searches of 22 Redglobe Court and 201 Huddersfield Drive, both of which locations are in Simpsonville, South Carolina. Accompanying this letter are copies of the search warrant and supporting affidavit for the search of the e-mail account cirruselectronics@gmail.com.

The FBI made videos of the searches at the two locations in South Carolina. Copies of those videos should be available soon, and I will have Special Agent Nimmo provide them to you when they are ready.

**Reports of Examinations and Tests**

The reports that the FBI will be generating concerning the seizure and imaging of the digital evidence are not available yet. When they become available, I will produce them.

**Expert Witnesses**

The government has yet to determine who from the Department of Commerce and the State Department will testify about their agencies' determinations that the products at issue in the indictment required licenses for export to the end-users in India. When the government has identified those individuals, it will provide the defense with the information that Rule 16(a)(1)(G), Fed. R. Crim. P., requires.

**Reciprocal Discovery**

The government renews its request for reciprocal discovery pursuant to Rule 16(b)(1), Fed. R. Crim. P.

Please let me know if you have any questions about the information and materials discussed above.

Very truly yours,

Jay I. Bratt
Assistant United States Attorney
(202) 353-3602

Enclosures

- 4 -

# EXHIBIT B



U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

October 12, 2007

VIA FACSIMILE

William T. Hassler, Esq.
Steptoe & Johnson
1330 Connecticut Avenue, NW
Washington, D.C. 20036-1795

Re:    United States v. Parthasarathy Sudarshan, Cr. No. 07-051 (RMU)

Dear Mr. Hassler:

I have been informed by the FBI's National Security Law Branch ("NSLB") that it will not declassify the phone intercepts that are currently classified and that it will not permit anyone who does not have a security clearance to have access to them.

As I have previously told you, Rochester Electronics, Inc. ("REI"), cooperated with the FBI in connection with the second shipment of i960 microprocessors that occurred on October 13, 2005. With respect to your inquiry last week about the FBI's relationship with Rochester Electronics, Inc. ("REI"), I can make the following representations: First, the FBI did not write any of the e-mails between REI and Cirrus Electronics ("Cirrus") or instruct any person at REI as to what to say in any of the e-mails or review the e-mails before they were sent. Nor did the FBI script any of the meetings that occurred between REI representatives and Mr. Sudarshan. No FBI agent was present at those meetings in an undercover capacity, and the FBI did not monitor the meetings. To the extent that there were any phone conversations between anyone at REI and Mr. Sudarshan, the FBI was not present with any REI person when such calls may have occurred. The FBI did request REI to seek certain information from Mr. Sudarshan. This information included more details about the ultimate destination of the microprocessors, more information about the end-use of the products, and an explanation for why Cirrus was routing the goods to India through Singapore. The FBI also requested REI to advise Mr. Sudarshan of the need for him to determine the licensing requirements for the items. The FBI did not pay REI for its assistance nor did it make any promises to REI. There was no formal written agreement between REI and the FBI in connection with the October 2005 shipment.

Please let me know if you have any questions.

Very truly yours,

Jay I. Bratt
Assistant United States Attorney
(202) 353-3602

-2-